**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ALBERT SWIDAN and**
**JENNIFER PARKER**

     **Plaintiffs,**

                                      **Civil Action No. 2:13-cv-11634**

**v**                                         **Hon. Arthur J. Tarnow**

**UNITED STATES OF AMERICA,**
**JOHN DOE #1, JOHN DOE #2, JOHN DOE #3,**
**JOHN DOE #4, JOHN DOE #5, JOHN DOE #6,**
**JOHN DOE #7, JOHN DOE #8, FEDERAL**
**BUREAU OF INVESTIGATION, and UNITED**
**STATES DEPARTMENT OF JUSTICE,**

     **Defendants**
_____/

**PLAINTIFFS' RESPONSE TO THE MOTION OF THE UNITED STATES, FEDERAL**
**BUREAU OF INVESTIGATION AND DEPARTMENT OF JUSTICE**
**TO DISMISS THE COMPLAINT**

     Plaintiffs  ALBERT SWIDAN and JENNIFER PARKER by and through their attorneys,

THE WOLF LAW FIRM, file this Response in opposition to the Defendants' Motion to Dismiss

their Complaint for the reasons set forth more fully in the attached brief in support of this

Response.

                        Respectfully submitted,

                        THE WOLF LAW FIRM

                        By: /s/Allen M. Wolf_____
                              Allen M. Wolf (P31759)
                              Attorney for Plaintiffs
                              436 S. Broadway, Suite C
                              Lake Orion, MI  48362
                              (248) 693-6245 – phone
                              (248) 693-5850 – fax
                              awolf@lawwolf.com

Dated: July 19, 2013

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ALBERT SWIDAN and**
**JENNIFER PARKER**

      **Plaintiffs,**

                                      **Civil Action No. 2:13-cv-11634**
**v**                                             **Hon. Arthur J. Tarnow**

**UNITED STATES OF AMERICA,**
**JOHN DOE #1, JOHN DOE #2, JOHN DOE #3,**
**JOHN DOE #4, JOHN DOE #5, JOHN DOE #6,**
**JOHN DOE #7, JOHN DOE #8, FEDERAL**
**BUREAU OF INVESTIGATION, and UNITED**
**STATES DEPARTMENT OF JUSTICE,**

      **Defendants**
_____/

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO THE MOTION OF THE**
**UNITED STATES, FEDERAL BUREAU OF INVESTIGATION AND DEPARTMENT**
**OF JUSTICE TO DISMISS THE COMPLAINT**

**ISSUES PRESENTED**

I.     **WHETHER THE COMPLAINT STATES A VIABLE CAUSE OF ACTION**
        **UNDER THE FTCA AGAINST THE UNITED STATES, FEDERAL BUREAU OF**
        **INVESTIGATION OR DEPARTMENT OF JUSTICE.**

II.    **WHETHER THE COMPLAINT CAN BE CONSTRUED AS STATING A CAUSE**
        **OF ACTION UNDER BIVENS OR 1983 AGAINST THE UNITED STATES,**
        **FEDERAL BUREAU OF INVESTIGATION OR DEPARTMENT OF JUSTICE.**

III.   **WHETHER THE PLAINTIFFS' FREEDOM OF INFORMATION CLAIM IS**
        **MOOT WHERE THE RESPONSE TO THE PLAINTIFFS' REQUEST REMAINS**
        **INCOMPLETE.**

# **TABLE OF CONTENTS**

TABLE OF CASES ....................................................................................................................... ii

FACTS ......................................................................................................................................... 2

ARGUMENT ............................................................................................................................... 5

   Standard of Review ................................................................................................................. 5

     I.    THE FEDERAL TORT CLAIMS ACT, 28 U.S.C. § 2674 ET SEQ .......................................... 5

     II.   THE BIVENS CLAIM/42 U.S.C. § 1983 ................................................................................. 10

     III.  THE PLAINTIFFS' FREEDOM OF INFORMATION CLAIM IS NOT MOOT WHERE
           THE RESPONSE TO THE PLAINTIFFS' REQUEST REMAINS INCOMPLETE ............. 11

CONCLUSION ............................................................................................................................ 12

# TABLE OF CASES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).......................5

*Berkovitz by Berkovitz v. United States,* 486 U.S. 531, 536, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988) .... 8

*Camacho v. Cannella*, 2012 U.S. Dist. LEXIS 121384 (W.D. Tx. 2012) ..................................................9

*Chandler v. United States*, 875 F. Supp. 1250 (N.D. Tx. 1994) ..................................................................9

*DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) ........................................................................5

*Garcia v. United States*, 709 F. Supp. 2d 1133, 1141 (D. N. Mex. 2010) ..................................................7

*Mapp v Ohio*, 367 U.S. 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1971) ...........................................................8

*Milligan v. United States*, 670 F.3d 686 (6th Cir. 2012)....................................................................passim

*Moher v. United States*, 875 F. Supp. 2d 739, 749 (W.D. Mich 2012)....................................................5, 9

*Nguyen v United States*, 556 F.3d 1244, 1255 (11th Cir. 2009) ...............................................................10

*Patel v. United States*, 806 F. Supp. 873, 878 (N.D. Cal. 1992) ................................................................9

*People v. LoCicero*, 453 Mich 496; 556 N.W.2d 498 (1996) .....................................................................8

*Sutton v. United States*, 819 F.2d 1289, 1295 (5th Cir. 1987) ..................................................................9

*Terry v Ohio*, 392 US 1, 9; 88 S Ct 1868; 20 L Ed 2d 889 (1968) ............................................................8

*United States v. Gaubert*, 499 U.S. 315, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991)...........................7, 8

## U.S. Constitution/Statutes

28 U.S.C. § 1346(b)(1) ..............................................................................................................................6

28 U.S.C. § 2674.........................................................................................................................................6

28 U.S.C. § 2680.........................................................................................................................................6

28 U.S.C. § 2680(a) ........................................................................................................................6, 7, 8, 9

28 U.S.C. § 2680(b) ....................................................................................................................................9

28 U.S.C. § 2680(h) ......................................................................................................................6, 10, 11

42 U.S.C. § 1983 .......................................................................................................................................11

5 U.S.C. § 552(b)(7)(C) .............................................................................................................................12

## **FACTS**

On the morning of November 4, 2010, at approximately 11:30 am, Federal Bureau of Investigation agents, assisted by other law enforcement officers, crashed through the front door of Albert Swidan and Jenifer Parker's rental residence, accompanied by gunfire, to execute a search warrant. Their dog Jasmine ("Jazzy") was shot in the hail of bullets/shotgun pellets that penetrated an interior door, refrigerator, wall, kitchen floor and couch of the residence.

Plaintiff Albert Swidan was yanked out of the bathroom at gun point, thrown violently to the floor of the living room naked, then handcuffed. Plaintiff Jennifer Parker had been asleep in the bedroom when she heard the shouting and gunfire and reached the door of the bedroom just as Jazzy retreated past her into the bedroom. When agents saw Jennifer she too was grabbed and violently pushed face-down and handcuffed on top of Albert, causing one breast to be exposed.

Both Albert and Jennifer were in fear for their lives and attempted to ask the agents what was going on several times and in response were loudly told to simply "shut the fuck up." Jennifer was advised to do something with Jazzy to contain her, and further told not to "whine" if she saw a lot of blood or if Jazzy was dead. Jennifer was then given Jazzy's leash and was told to get Jazzy in her crate, and if Jazzy showed any sign of aggression, Jazzy "would be executed."

Approximately 30 minutes after the door was kicked in, shots fired, and the Plaintiffs were physically, verbally and mentally abused it became apparent that Albert and Jennifer were not involved in any unlawful activity whatsoever, nor had anything to do with the investigation prompting the raid in question. It seems the agents were looking for persons who had occupied the premises many months previously.

2

By letter dated November 6, 2012, Plaintiffs' counsel submitted a Freedom of Information Act request to the F.B.I on behalf of the Plaintiffs seeking information. (Exhibit A). The F.B.I advised that Plaintiffs' requests did not contain "sufficient information" to conduct an accurate search of responsive records. (*Id*.). Accordingly, Additional information was provided by Plaintiffs' counsel by letter and attachment dated November 21, 2012. (*Id*.).

By letter dated June 17, 2013, a response was received stating that only 76 of 106 pages were being released. (Exhibit B, p. 1).  Withheld documents are only listed by page number, without any description of what those documents might be. (Exhibit B, "Deleted Page Information Sheets). The 76 pages were extensively redacted. (See, *Id*., pp. FBI FOIA-85 - 89). The letter advises that the Plaintiffs may appeal the denials of disclosures within 60 days. (*Id*., p 2).

Key documents pertinent to this case have either been withheld, or redacted so extensively as to be useless in getting to the actual acts or even identity of the agents which form the basis of this case. (Exhibit B, p. FBI FOIA-85). The limited disclosures do, however, illustrate some of the violence perpetrated by the agents on the morning of November 4, 2010.

The documents reflect that a hail of gunfire is not an understatement. Repairs were needed for bullet holes in the kitchen floor; bullet holes in the kitchen door; bullet holes in futon covers; a freezer door "hit by bullet"; and, four holes in the kitchen and entry way wall "caused by slugs." (Exhibit C).

Jasmine's gunshot wound and surgery is also documented. As an initial matter, it may be noted that she is described as a 1 year and three month old terrier mix weighing 49 pounds.

(Exhibit D). She was not a large dog. That her injury was extensive is reflected in the $1,347.97 surgery bill. (*Id*.).

It appears from the limited response to the Plaintiffs' FOIA request that the raid at Plaintiffs' address was contingent. The "Overall Primary Plan" references execution of Federal search warrant at a redacted address, subsequent to the completion of which, "and only if a search warrant is obtained or further information is developed that subjects are at" Plaintiffs' residence, then a search or arrest warrant would be executed. (Exhibit B, p. FBI FOIA-86).

It also appears that the hail of gunfire was contrary to FBI policy on the use of deadly force. (Exhibit B, p. FBI FOIA-88).[1] There was nothing confronting the officers when they crashed through the door which posed a threat of imminent danger or death or serious physical injury which conceivably justified peppering the residence with bullet holes in the kitchen floor; bullet holes in the kitchen door; bullet holes in futon covers; a freezer door "hit by bullet"; and, four holes in the kitchen and entry way wall "caused by slugs." (Exhibit C).

Notably absent and withheld from the FOIA response is any documentary support for the proposition that the search warrant pursuant to which this raid was conducted was even facially valid. Absent discovery of the withheld documents and review of unredacted copies of the limited documents produced by the FBI summary judgment is premature.

---

[1]     The "Non Deadly Force Policy" of the "DPD" was apparently read to "DPD" Task Force Officers. (Exhibit B, p. FBI FOIA-89). That Policy, though certainly within the scope of the FOIA request, has not been produced.

**ARGUMENT**

**Standard of Review**

Defendants' motion is brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). When a Rule 12(b)(1) motion attacks the factual basis of a plaintiff's claim of subject matter jurisdiction the Court has wide discretion to allow affidavits, documents outside the pleadings, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Moher v. United States*, 875 F. Supp. 2d 739, 749 (W.D. Mich 2012).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to provide fair notice to the defendant of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). It is assumed that the factual allegations of the complaint are true and the decision rests upon whether the complaint states a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

I.      **THE FEDERAL TORT CLAIMS ACT, 28 U.S.C. § 2674 ET SEQ.**

As an initial matter, the Plaintiffs' FTCA Count properly identifies the United States as the Defendant as to Count I, and as supported by the underlying Counts III - VII. To the extent

5

that the Defendants have construed the FTC Count to include other Defendants, they are mistaken.

The FTCA provides a limited sovereign immunity waiver and subject matter jurisdiction for plaintiffs to pursue state law tort claims against the United States. 28 U.S.C. § 1346(b)(1). *See*, *Milligan v. United States*, 670 F.3d 686 (6th Cir. 2012). The FTCA waives sovereign immunity where state law would impose liability against a private individual, and the suit proceeds against the federal government "in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. ; *Milligan*, *supra* at 692. The extent of governmental tort liability is "determined in accordance with the law of the state where the event giving rise to liability occurred." *Id.*

The FTCA, as a limited grant of jurisdiction, excludes certain tort claims from its sovereign immunity waiver. *See* 28 U.S.C. § 2680. In this case the United States contends that the "discretionary function" exception, § 2680(a), and the "intentional tort" exception, § 2680(h) are applicable.

The United States suggests that *Milligan*, *supra* is a case "on all fours with the allegations in the case at bar," and supports dismissal of the Plaintiffs' FTCA claim. Plaintiffs' contend that while *Milligan*, *supra* may provide an analytical framework, application of the analysis to the facts of this case must result in denial of the United States' Motion to Dismiss.

## 1.    The Discretionary Function Exception

The discretionary function exception insulates the government from tort liability for claims arising from a federal actor's "exercise . . . [of] a discretionary function or duty . . . ." 28 U.S.C. § 2680(a).

To determine whether tortious conduct falls within the discretionary function exception, this Court applies the Supreme Court's two-pronged *Gaubert* test. *Milligan*, *supra* at 693 (citing *United States v. Gaubert,* 499 U.S. 315, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991)). The first prong requires this Court to determine "whether the challenged actions were discretionary, or whether they were instead controlled by mandatory statutes or regulations." *Gaubert,* 499 U.S. at 328. The focus of this inquiry is on whether the actor had any "element of judgment or choice" in taking his course of action. *Milligan*, *supra*. "The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee had no rightful option but to adhere to the directive." *Id*. If the actions were made under a mandatory regulation or policy, leaving the actor no judgment or choice in his course of action, then § 2680(a) presents no obstacle to a claim under the FTCA. *Milligan*, *supra*.

In this case, the limited FOIA disclosure to date discloses that the discharge of firearms was contrary to policy. The agents had no rightful option but to adhere to the directive. Contrary to that directive the agents unleashed a hail of bullets creating an unreasonable risk of serious harm to innocent third parties, and actual harm to a helpless animal. *Garcia v. United States*, 709 F. Supp. 2d 1133, 1141 (D. N. Mex. 2010)(Certain aspects of an investigation may be considered non-discretionary if officials fail to follow specific agency mandates or directives governing their conduct).

Plaintiff's further submit that obtaining a valid warrant is a mandatory requirement.

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

7

particularly describing the place to be searched, and the persons or things to be seized.

US Const. Am IV. The Fourth Amendment protects citizens from unreasonable searches and seizures. *Terry v Ohio*, 392 US 1, 9; 88 S Ct 1868; 20 L Ed 2d 889 (1968); *People v. LoCicero*, 453 Mich 496; 556 N.W.2d 498 (1996). The Fourth Amendment is made obligatory upon the states by the due process clause of the Fourteenth Amendment. *Mapp v Ohio*, 367 U.S. 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1971).

Without, for example, disclosure of an affidavit allegedly supporting the search warrant executed in this case Plaintiffs' are unable to demonstrate that intentionally false or misleading statements were made to secure the warrant. The government should not be heard to argue that the FTCA claim must be dismissed where the government is withholding the very information which may resolve the issue.

Unlike *Milligan*, *supra*, Plaintiffs are not mis-characterizing the warrant requirements or FBI policy or taking them out of context. The discretionary function exception provides no obstacle to Plaintiffs' claim under the FTCA on the facts of this case.

If, however, this Court were to find that discretionary conduct was involved then the second prong of the *Gaubert*, test looks to "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert,* 499 U.S. at 322-23 (quoting *Berkovitz by Berkovitz v. United States,* 486 U.S. 531, 536, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988)).  This second prong seeks to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id. at 323*.

8

Again, unlike *Milligan*, *supra*, this case only tangentially involves the process of verifying whether an apprehended person is actually a suspect named in a warrant. The policy at issue is the sanctity of the home and the right to be free from government intrusion. In balance, social, economic, and political policy must favor redress through the medium of an action in tort when that sanctity is violently violated. Compare, *Camacho v. Cannella*, 2012 U.S. Dist. LEXIS 121384 (W.D. Tx. 2012) (Citing, *Sutton v. United States*, 819 F.2d 1289, 1295 (5th Cir. 1987) (Both §§ 2680(a) and (b) recognize that what relief is and is not available under the FTCA necessarily requires a synthesis of the policies as applied to the specific facts of each situation)); *Chandler v. United States*, 875 F. Supp. 1250 (N.D. Tx. 1994); *Patel v. United States*, 806 F. Supp. 873, 878 (N.D. Cal. 1992)(some of the decisions made and actions taken by the officers in the course of serving the search warrant were not based on considerations rooted in economic, social, or political policy).

### 2.    The Exception to the Intentional Tort Exception

Assuming for the sake of argument that the discretionary function exception applies, Defendants' motion to dismiss based upon Rule 12(b)(1) must still be denied where the discretionary function exception does not bar the intentional tort claims which are specifically allowed under the law enforcement proviso in 28 U.S.C. § 2680(h). *Moher*, *supra* at 766.

If a federal law enforcement or investigative officer engages in "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution," sovereign immunity is waived and courts have subject matter jurisdiction under the FTCA. 28 U.S.C. § 2680(h).  In determining whether a plaintiff's claim falls within the law enforcement exception to the intentional tort exception, this Court looks to the substance of the claim. *Milligan*, *supra* at 695.

9

In this case the government suggests that the substance of the Plaintiffs' Complaint is really just negligence, and that the agents did not really intend to crash through the door with guns blazing in a shock-and-awe approach; did not intend to threaten or offer to do bodily injury to by force, under circumstances which created a well-founded fear of imminent peril to the Plaintiffs, which was coupled with the apparent present ability to carry out the act if not prevented; did not intend to touch the Plaintiffs against their will; did not really intend to seize or detain the Plaintiffs; and/or did not really intend to restrain Plaintiffs' personal liberty or freedom of movement. *Compare*, Michigan Standard Jury Instructions 115.01 (definition of assault); 115.02  (definition of battery); 116.01 (definition of false imprisonment); 116.02 (definition of false arrest).

Again, unlike *Milligan*, *supra*, these acts were not the result of a simple clerical error resulting in the peaceful arrest of an innocent person. That the sequence of events may have been spawned by an intentional and reckless disregard of the procedures for obtaining a valid warrant, and an intentional and reckless disregard of policy in the execution, does not render the substance of Plaintiffs' Complaint anything other than grounded in intentional conduct. *Compare*, *Nguyen v United States*, 556 F.3d 1244, 1255 (11th Cir. 2009)(Congress intended § 2680(h) to ensure that future innocent victims of raids by federal law enforcement officers or agents would have a damages remedy against the United States).

## II.     THE BIVENS CLAIM/42 U.S.C. § 1983

Defendants contend that the Plaintiffs' *Bivens* claim in Count II should be dismissed as against defendants the United States, FBI and DOJ. Again, the Plaintiffs' submit that their 42 U.S.C. § 1983 as alleged in Count II properly identifies the "Defendant agents/officers" as the

subject of Count II. To the extent that the Defendants have construed Count II to include the United States, FBI and DOJ they are mistaken.

**III.    THE PLAINTIFFS' FREEDOM OF INFORMATION CLAIM IS NOT MOOT WHERE THE RESPONSE TO THE PLAINTIFFS' REQUEST REMAINS INCOMPLETE**

It is curious that the Defendants state that Plaintiffs' FOIA claim is moot because "[t]he FOIA request has been responded to as of the date of filing of this motion." Defendants' Motion was filed on June 14, 2013. Yet, the limited response of the DOJ/FBI to Plaintiffs' FOIA request was not mailed until three days later, on June 17, 2013.

As noted above, the Plaintiffs are appealing the denials in the limited release of documents. For example, even the names of the involved agents have been redacted on "personal privacy" grounds. (Exhibit B, p. FBI FOIA-85). *See*, 5 U.S.C. § 552(b)(7)(C). Withheld documents are only listed by page number, without any description of what those documents might be. (*Id*., "Deleted Page Information" Sheets). The coincidence of the timing of the DOJ/FBI response and lack of disclosures relevant to this case support the proposition that the government's intent is to delay and prevent discovery of facts and documents necessary to the prosecution of Plaintiffs' claims

There remains a controversy as to the sufficiency of the DOJ/FBI response.

## **CONCLUSION**

For all of the foregoing reasons Plaintiffs ALBERT SWIDAN and JENNIFER PARKER respectfully request that the Court deny the motion of the United States, Federal Bureau of Investigation and Department of Justice to dismiss their Complaint.

Respectfully submitted,

THE WOLF LAW FIRM

By: /s/Allen M. Wolf
        Allen M. Wolf (P31759)
        Attorney for Plaintiffs
        436 S. Broadway, Suite C
        Lake Orion, MI  48362
        (248) 693-6245 – phone
        (248) 693-5850 – fax

Dated:  July 19, 2013           awolf@lawwolf.com

12

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on July 19, 2013, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

<div style="margin-left:40%">

/s/Cheryl Pinter           
436 S. Broadway, Suite C
Lake Orion, MI 48362
(248) 693-6245
legalassistant@lawwolf.com

</div>